## Commonwealth ex rel. Burleigh *v.* Grier, Appellant.

*Salary of district attorney of Allegheny county.*

The act of March 31, 1876, P. L. 13, entitled "An act to carry into effect § 5 of art. 14 of the constitution relative to the salaries of county officers, and the payment of fees received by them into the state and county treasuries in counties containing over one hundred and fifty thousand inhabitants," applies to Allegheny county and repeals the local acts of April 6, 1871, and March 6, 1872, in so far as they relate to the district attorney's office.

The entire fees earned by the office of district attorney in Allegheny county are to be credited to that officer so far as necessary for the payment of his deputy and clerks, as allowed by the salary board and approved by the court.

*Allowance for forfeited recognizances.*

The district attorney of Allegheny county is entitled as fees of his office to whatever percentage or compensation may be allowed him by the court on forfeited recognizances collected or sued on by him, but the whole amount collected by him cannot be so credited.

*Assistant district attorney.*

The assistant district attorney of Allegheny county is an independent officer, without fees, but with a salary to be paid by the county.

Argued Nov. 3, 1892. Appeal, No. 199, Oct. T., 1892, by defendant, James A. Grier, controller, from judgment of C. P. No. 2, Allegheny Co., Oct. T., 1892, No. 114, issuing a peremptory mandamus in favor of the Commonwealth ex rel. Clarence Burleigh, district attorney. Before PAXSON, C. J., STERRETT, WILLIAMS, MCCOLLUM, MITCHELL and HEYDRICK, JJ.

Petition for mandamus.

The facts appear in the following opinion of the court below by EWING, P. J.:

"The controller refuses to certify to the commissioners an order for a warrant in favor of the district attorney for his salary for the months of May and June, 1892. The district attorney claims that his legal salary is at the rate of $6,000 per annum, and that there is more than enough money in the county treasury that should be credited to his office to pay his salary. The controller contends that the legal salary of the district attorney is but $4,000 per annum and that there is no money in the treasury from fees earned by the office to pay any part of the salary claimed. . . .

"What is the legal compensation of the district attorney of Allegheny county? Prior to 1871 it was made up of fees taxed in prosecutions in the court of quarter sessions and oyer and terminer under the local act of May 14, 1857, P. L. 507; and of fees or commissions allowed him by the court on forfeited recognizances. Prior to 1863 the district attorney of Allegheny county did not collect forfeited recognizances. By act of April 14, 1863, P. L. 477, the provisions of an act of assembly, approved April 22, 1846, P. L. 477, which authorized the attorney general (now district attorney) to bring suit on forfeited recognizances in Philadelphia county in the court of quarter sessions, was extended to Allegheny county. The act provides, inter alia, for compensation for the collection, and to be allowed by the court. The practice under this act was to allow the district attorney ten per cent on amount collected in ordinary cases; and a practice which the writer found to be well established, when he first held a term of the criminal courts, was to allow a compensation to the district attorney on remittance of the forfeiture on a recognizance where suit

had been brought. The amount realized from this source we are unable to state, but it was probably at least $1,000 per annum.

" So stood the law until the passage of the act of April 6, 1871, P. L. 476, 'relating to the fees, salaries and duties of certain county officers in Allegheny county.' This act fixed the salary of the district attorney at $4,000, and also provided that all the fees earned by the office should be turned into the county treasury, and it also provided that in case the fees so earned and paid in were not sufficient to pay the salary there should be an abatement of salary to the amount of the deficiency.

" A supplement to the act of 1871, approved March 6, 1872, continued the salary of the district attorney at $4,000, but added : ' And the district attorney shall be entitled to receive in addition fifty per cent of the fees and percentages allowed by the court or now authorized by law on all forfeited recognizances,' thus making the compensation of the district attorney in part a fixed salary and in part fees and commissions. So the compensation stood when the present constitution was adopted.

" The 5th section of article 14 of the constitution provides that ' the compensation of county officers shall be regulated by law, and all county officers who are or may be salaried shall pay all fees which they may be authorized to receive into the treasury of the county or state, as may be directed by law.'

" ' In counties containing over 150,000 inhabitants all county officers shall be paid by salary, and the salary of any such officer and his clerks heretofore paid by fees shall not exceed the aggregate amount of fees earned during his term and collected by or for him.'

" This section did not immediately affect the officers, nor repeal the local law. It required legislation to carry it into effect. It did not take away the additional compensation of the district attorney of Allegheny county over and above his salary of $4,000. See section 2d of the schedules to the constitution, as also Perot's Appeal, 86 Pa. 335. In that case it was decided in 1875 that until the legislature passed an act to carry into effect the 5th section of article 14 of the constitution the prothonotary of Philadelphia (appointed after the con-

stitution was adopted) was entitled to the fees earned by his office.

" On March 31, 1876, an act of assembly was approved, P. L. 13, entitled ' An act to carry into effect section 5 of article 14 of the constitution relative to the salaries of county officers and the payment of fees received by them into the state or county treasury in counties containing over one hundred and fifty thousand inhabitants.'

" This act in direct terms applied to all counties in the state having over 150,000 inhabitants and required all officers receiving fees therein to pay the whole thereof into the county treasury. It fixed the salary of the district attorney in counties of over 250,000 and less than 300,000 inhabitants at $5,000 and took away all other compensation. It clearly included Allegheny county and was plainly intended to include it. Did it repeal the local acts of 1871 and 1872 for Allegheny county so far as the district attorney's office is concerned?

" It is claimed by counsel for respondent that the recent case of Bell v. Allegheny County, reported in Pittsburgh Legal Journal, June 1, 1892, conclusively decided the question in the negative.

" In that case the salary of the county treasurer had been definitely fixed by local acts, approved May 1, 1861, and March 11, 1870. At the time of the adoption of the constitution, the compensation was a fixed definite salary without any fees of office. As to that office, no further act of assembly was required to carry into effect the 5th section of article 14 of the constitution, and the act of 1876 was held not to repeal, as to him, the local act. The district attorney's office, as we have seen, was in part a salaried one, and in part the compensation was fees—and so it remains, unless the acts of 1871 and 1872 are repealed by the act of 1876—passed for the express purpose, inter alia, of bringing it into harmony with the provisions of the constitution. The case is essentially different in this respect from the case of the county treasurer. The contemporary interpretation by the financial officers of the county and their advisers was that the commissions on forfeited recognizances thereafter went in full to the county treasury, and the district attorney's compensation has been treated as salary alone at $5,000 per annum. If this be not the true interpretation, we

have the case of an officer, included in the 5th section of article 14 of the constitution, with a substantial part of his compensation still, in this year 1892, consisting of fees and not salary.

" It is true that a general affirmative statute will not repeal a previous particular statute on the same subject, though the provisions of the former be different from those of the latter, as stated in Bell v. Allegheny County; but we recall no case in which it has been held that it requires express words referring to the particular statute to repeal it. It is sufficient if there be a necessary inconsistency in the two acts standing together. This is the rule laid down in Dillon on Municipal Corporations, § 54; Bounty Accounts, 70. Pa. 96, and cases there cited.

" In Com. v. McCandless, 21 W. N. 162, the rule is laid down thus : ' To repeal a local law by a general law, in the absence of a repealing clause, the repugnancy between the provisions of the new law and the old must appear so positive as to make them irreconcilable.'

" In this and six other cases, going upon various questions, the Supreme Court decreed that the general act of 1887, known as the ' Brooks law,' repealed the local act of 1872, in regard to retail liquor licenses in Allegheny county, although not specially mentioned. The same rule is laid down in Commonwealth v. Erie R. R. Co., 98 Pa. 132.

" The rule laid down in Johnston's Est., 33 Pa. 511, is : A subsequent affirmative statute is a repeal by implication of a former one made concerning the same matter, if it introduces a new rule upon the subject, and be evidently intended as a substitute for the former law, although it contain no express words repealing it. A local law for Berks county was held to be repealed by a subsequent law applicable to Berks, and a few other counties, without express repealing words.

" In Nusser v. Commonwealth, 25 Pa. 126, a general statute was held to repeal a local statute, without any reference to the local statute or repealing clause.

" It is said that the act of 1876 is a general law, and, in one sense, it is, but in another and stronger sense it is a local law, and, as such, not obnoxious to the constitutional prohibition against local legislation. It is an exception from that prohibition, and is local legislation in regard to the affairs of counties

and as to county officers, made necessary by the express mandate of the constitution. It is thus different from classification of cities for the purpose of legislation, which depends on judicial construction and discretion. At the adoption of the constitution it was well known that there were but three counties that had over 150,000 inhabitants. Allegheny county was one of these, and the only one that had special laws approximating the constitutional provision in question. It was well known that as to this office and others fees were still given the officer. The classification of these counties by population in the act of 1876, and its supplements, does not stand on the same basis as the acts classifying cities, although there is a similarity. The framers of the section in question understood the situation and provided for necessary local legislation for these counties. They did not intend or suppose that the sheriff's salary in a county of 1,000,000 should be the same as in a county of 150,000 inhabitants.

" Philadelphia and Pittsburgh had many local and special statutes prior to 1874. Has it ever been held or claimed to be necessary to specify and specially repeal one of these old local statutes—where an act has been passed relative to cities of the first or second class with provisions inconsistent and irreconcilable with such older special statute—simply because the later statute may at some future time apply to some other city than Pittsburgh or Philadelphia? Such a holding would create worse confusion than has yet occurred in regard to legislation for cities in this commonwealth.

" 1. For this case we have, at the adoption of the constitution, a local law which fixed the compensation of the district attorney of Allegheny county as in part a salary and a substantial additional part in fees or commissions.

" 2. We have a constitutional provision that in Allegheny county all county officers shall be paid by salary alone, and that all fees shall be paid into the treasury (the constitution expressly names the district attorney as a county officer), and we have a constitutional mandate that the legislature should ' at its next session or as soon thereafter as may be ' pass an act or acts of assembly to carry this provision into effect—and another provision of the constitution continues the special acts fixing compensation until the legislature has provided, acts to carry into effect the constitutional provisions.

" 3. The legislature, not having earlier acted on the matter, in 1876 passed an act declaring in its title that the express purpose thereof was to carry into effect this constitutional provision contained in section 5 of article 14 relating to fees and salaries of county officers, as to amount of salaries of county officers. In section 13 of this act, Allegheny county is clearly designated by the minimum and maximum of population. In section 12, Philadelphia is clearly designated, and in section 14, Luzerne county is provided for. Had the act of 1876 been passed in 1873, before the adoption of the present constitution, no one would have doubted that it repealed the local acts of 1871 and 1872, even though they were not repealed in direct terms. The salary of the district attorney of Allegheny county is increased from $4,000 to $5,000, and all his fees amounting to probably the difference are thenceforth to be paid into the county treasury as required by the constitution.

" There was a local evil to be remedied by legislation, to wit : an inconsistency between the constitution and the local law. An act was passed expressly declaring its purpose to be the removal of all such inconsistencies. The act passed was irreconcilably inconsistent with this local law.

" In our opinion the act of 1876 was, as to the office of district attorney of Allegheny county, irreconcilably inconsistent with the act of 1871 as modified by the act of 1872. It was clearly intended so to be, and was intended to and did repeal the old acts so far as this office was concerned, and this conclusion is not in any necessary conflict with the decision or opinion of the Supreme Court in the case of Bell v. Allegheny Co.

" This act of 1876 made the salary $5,000, and the act of 1891, approved June 16, P. L. 315, made the salary $6,000, and to this amount the district attorney is entitled if the earnings of his office amount to sufficient to pay the amount over and above the compensation of his deputy and clerks allowed by the salary board.

" The second main question of the case is this : Are there sufficient funds in the treasury earned by the office and applicable thereto to pay this salary ?

" The return of the controller gives the entire receipts from fees of the district attorney's office from June 1, 1891, to June 1, 1892, as $10,177.66, and the payments for the corres-

ponding period as $8,266.59. In this he gives no credit on account of forfeited recognizances collected and paid in.

" The petition of the district attorney claims for the term beginning on the first Monday of January, 1892, when he was sworn in for a new and full term. The acts of assembly of 1871 and 1876 and the constitution require the salary to be paid from fees earned during ' the term ' of office, which clearly means to separate the terms if there be more than one. The controller has therefore made an additional return, which shows that, excluding collections on forfeited recognizances, the fees of the office for the six months ending July 1, 1892, collected and paid into the county treasury are $4,931. The district attorney claims that this is all to be credited for his use so far as necessary for salaries. The controller contends that but two thirds thereof should be so credited and that one third thereof should be credited to the separate office of assistant district attorney as created and provided for by act of assembly approved Feb. 6, 1867, P. L. 140.

" This office of assistant district attorney in Allegheny county is an anomaly in the law of Pennsylvania. The office was created in fact for a special purpose, and has been continued because it is difficult to repeal such an act. The officer is in no way dependent on the district attorney, nor accountable to him, nor can he be called on officially to assist him. The duties are specified in the act and he is made an assistant only in name. No fees are earned by his office directly or attached thereto. But the fourth section of the act provides that ' the fees of the assistant district attorney shall be taxed and allowed out of the fees as now allowed by law to the district attorney, of said county, two thirds of all said fees, costs and allowances in each and every case, action and proceeding whatever to be taxed for the use of the district attorney and the remaining one third thereof to be taxed, allowed and collected for the use of said assistant district attorney.' Thereafter the one third of the fees of the district attorney's office (not including percentage of forfeited recognizances) was paid by or for the district attorney to the assistant district attorney. So stood the law and custom until the passage of the act of 1871. The first section of that act provides that ' all fees limited and appointed by law to be received by the district attorney, the sheriff, coroner, prothono-

tary, clerk of courts and clerk of orphans' court, recorder and register . . . . shall belong to the county of Allegheny, and be collected for its use,' etc. The assistant district attorney is not named in any way as being entitled to fees nor is he to give any account thereof, but his salary is fixed at $1,500, to be paid by the county. The framer of the act evidently supposed that the assistant was appointed by and was a clerk or deputy of the district attorney, as in other parts of the state. It seems to us that this act made the assistant district attorney a salaried officer without fees, either to be credited to him or named by him, or in any way accounted for by or for him, and required all the fees to be credited to the district attorney so far as necessary to pay himself and clerks.

" The 5th section of the supplementary act of 1872, P. L. 210, provides ' that all special acts heretofore passed, fixing the rate of fees to be charged by the county officers of the county of Allegheny, except so far as relates to the district attorney and coroner, be and the same are hereby repealed.'

" Any fees ever to be charged by or for the assistant district attorney were fixed by special act; and if any fees had remained after the act of 1871 they were taken away by this act.

" The 13th section of the act of 1876 fixed the salary of the assistant district attorney at $1,500, and the 16th section of the same act directs ' that the county solicitor, controller, engineer or surveyor, county detective, assistant district attorney, county treasurer and court interpreter, shall severally be paid quarterly, and shall be paid the full amount allowed to them by this bill.' This act, if applicable to the office of district attorney or assistant district attorney, as we believe it is, would make the assistant a salaried officer. Query: Is he a county officer?

" We are of the opinion that the entire fees earned by the office of district attorney are to be credited to the officer, so far as necessary for the payment of his deputy and clerks, as allowed by the salary board and approved by the court.

" The assistant district attorney is an independent officer, without fees, but with a salary to be paid by the county, as is the case with the county detective and county solicitor, and court interpreter.

" Other questions arise in regard to the claim for the entire amount of forfeited recognizances collected.

"If the act of 1876 has not repealed the acts of 1871 and 1872, as to the district attorney, he is entitled to one half the fees allowed him for collecting, which has customarily been ten per cent. If the district attorney's office was affected by the act of 1876, then all such fees and allowances would be fees of the office going to make up his salary, and the excess belongs to the county.

"The act of May 11, 1881, entitled 'A supplement to an act to carry into effect the fifth section of article 14 of the constitution,' etc., (passed in 1876,) provides that the salary of the district attorney shall be $5,000. 'And for the purpose of securing to the district attorney the full salary provided by law all sums collected by him on forfeiting recognizances shall be estimated as fees of his office for the purpose of paying said salary.' It is under this act that the district attorney claims as a fund from which his salary is to be paid the full amount of the forfeited recognizances collected by him. Waiving for the present any other objections to the constitutionality of this act of assembly, and assuming that it applies to the district attorney of Allegheny county, it is in contravention of the fifth section of article 14 of the constitution, which provides that 'the salary of any such officer and his clerks heretofore paid by fees shall not exceed the aggregate of fees earned during his term and collected by him or for him.'

"The legislature might fix any reasonable amount or percentage of the amount collected as fees of the office, but to make the whole amount collected fees for the purpose of paying the salary for that purpose alone, is a plain attempt to evade the constitutional inhibition.

"We are of the opinion that the district attorney is entitled as fees of his office (not in any event shared in by the office of assistant district attorney) to whatever percentage or compensation may be allowed him by the court on forfeited recognizances collected or sued on by him, but that the whole amount collected by him cannot be so credited. At the customary rates allowed, this would give him $290.60 on the amounts collected and paid in from January 4 to July 1, 1892.

"The fees collected by and for the district attorney's office, from January to July, 1892, six months, are :

By return and amended return of controller .      $4,931 00
Commissions on forfeited recognizances .      .      290 60
$5,221 60

The amount paid out on account of the
district attorney's office for the same
time is, for deputy and clerk, to July $2,200
District attorney, January to May, four
months      .      .      .      .      .      .      2,000 $4,200 60

This leaves a balance to credit of district attorney's office of $1,021, July 1, 1892, for the present term, sufficient to pay his salary for May and June.

"A peremptory mandamus should issue as prayed for. Let the formal order be drawn by counsel."

*Error assigned* was decree awarding peremptory mandamus, quoting it.

*Jas. Fitzsimmons, J. S. Robb* with him, for appellant.—The act of 1876 did not repeal the special act of 1871: Pierie's Ap., 139 Pa. 574; Bell v. Allegheny Co., 22 N. S. Pitts. L. J. 402; Brown v. Commissioners, 21 Pa. 37; Malloy v. Reinhard, 115 Pa. 29; Morrison v. Fayette Co., 127 Pa. 110; Rymer v. Luzerne Co., 142 Pa. 108. The act is unconstitutional: Henkle's Ap., 116 Pa. 490; Hatfield v. Com., 120 Pa. 395; Frost v. Cherry, 122 Pa. 417; Scowden's Ap., 96 Pa. 422; Weinman v. Ry. Co., 118 Pa. 191; Phila. v. Haddington Church, 115 Pa. 293; Davis v. Clark, 106 Pa. 384.

*D. T. Watson*, with him *Clarence Burleigh*, for the appellee, cited, on question of repeal: Com. v. McCandless, 35 Pitts. L. J. 330; Bounty Accounts, 70 Pa. 96; Com. v. Erie Ry., 98 Pa. 132; Keller v. Com., 71 Pa. 413; Nusser v. Com., 25 Pa. 126; Johnston's Est., 33 Pa. 511. On constitutionality of act of 1876: Monroe v. Luzerne Co., 103 Pa. 278; Luzerne Co. v. Glenon, 109 Pa. 564; Perot's Ap., 86 Pa. 335; Taggart v. Com., 102 Pa. 354; Phila. v. Martin, 125 Pa. 583.

PER CURIAM, January 3, 1893:

The judgment in the case is affirmed upon the opinion of the learned president of the court below.